Docket # 38-24 at 11 (emphasis added).
[7] Although defendant attempts to create an issue of material fact by stating that "[a]t least some of the relevant Los Gatos bills of lading were not marked prepaid, collect, or third party," Docket # 58, at ¶ 10, it has not provided any contradictory evidence in the record to show that any bills of lading were marked prepaid. Further, the UP Bills of Lading, which were generated after the consignors had submitted their bills of lading, were indeed marked "collect." See Docket # 44-21 ("Your bill has been received by Union Pacific Railroad"). Even more, defendant agreed to payment "collect" in its own contract with DSA. Docket # 44-23. Thus, there is no genuine dispute as to whether the shipments were "collect" moves.
[8] While Hawkspere,Omni, and Strachan each involved a shipper/consignor's equitable estoppel defense, the analysis in those cases applies with equal force to a consignee's defense. That is confirmed by the Oak Harbor case, in which the Ninth Circuit followed Hawkspere,Omni, and Strachan in denying the equitable estoppel argument of a party who was consignor of some disputed shipments and consignee of others. See Oak Harbor, 513 F.3d at 959. It is further confirmed by the Southern District of Florida's decision in Spedag Americas, Inc. v. Petters Hospitality & Entertainment Group, LLC, in which the court noted that "the same logic" of those cases "applies to allocation of risk in the parallel 'innocent consignee' context." No. 07-80576-CIV, 2008 WL 3889551, at *6 (S.D. Fla. Aug. 18, 2008).
[9] Defendant fails to show a material dispute of fact regarding the total amount of the unpaid freight charges. Plaintiff contends that the total principal amount is $728,917, Docket # 49, at ¶ 71, whereas defendant argues that the total amount is $701,301, Docket # 58, at ¶ 12. However, Exhibit 13, which defendant cites to in support of its position, appears to be a spreadsheet of the 68 shipments showing that the total balance of unpaid freight charges, less the incidental finance charges, is $728,917. Thus, this amount is not seriously disputed.
[10] Nonetheless, although plaintiff is entitled to the relief it claims, the result of this litigation falls harshly on defendant, and the court urges the parties to resolve at least this last issue with grace.
[11] As to interest, Item 120 of the UP Rules Circular provides for prejudgment interest "from the date of shipment" and "at the maximum rate of interest allowed by law in the jurisdiction in which the suit is filed." Docket # 38-24 at 34. Relying on this provision, plaintiff asserts that "$399.41 in interest charges accrue daily on the unpaid Freight Charges" based on a purported "maximum legal [interest] rate in Massachusetts" of twenty percent annually. Docket # 42 at 18 (citing Mass. Gen. Laws ch. 271, § 49 ). There are multiple problems with this argument. First, this suit was filed in federal court and plaintiff asserts a federal cause of action. It is therefore unclear why Massachusetts law is the "law in the jurisdiction in which the suit is filed" in this case. Second, even if Massachusetts law did apply, it is unclear why the "maximum rate of interest allowed by law" should be 20% as set by the usury statute cited by plaintiff and not 12% as allowed by Mass. Gen. Laws ch. 231, § 6C, the statute specifically concerning prejudgment interest in contract actions such as this one. These deficiencies make it currently impossible for the court to determine the appropriate amount of prejudgment interest to be assessed on the freight charges.
--------